Anna PENK, et al., Plaintiffs,

v.

OREGON STATE BOARD OF HIGHER EDUCATION, Defendant.

Civ. No. 80–436 FR.

United States District Court,
D. Oregon.

April 5, 1983.

Opinion and Order May 20, 1983.

On Motion to Reconsider June 21, 1983.

On Miscellaneous Motions Sept. 1, 1983.

Don S. Willner and JoAnn B. Reynolds, Willner, Bennett, Bobbitt, Hartman & Tauman, P.C., Portland, Or., for plaintiffs.

Dave Frohnmayer, Atty. Gen., James J. Casby, Jr., Asst. Atty. Gen., Eugene, Or., Lawrence Fine, Mark Dichter, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

FRYE, District Judge:

Plaintiffs have moved this court for an order compelling production of certain documents. The documents are generally affirmative action documents, files on sex discrimination complaints, and correspondence to and from defendant's affirmative action officers or committees. Defendant resists production of these documents, arguing that disclosure of documents containing self-evaluation or self-criticism will have a substantial chilling effect on the ongoing effort to voluntarily comply with the employment discrimination laws. Plaintiffs argue that these documents are crucial in proving that the defendant acted with discriminatory intent. Both parties cite cases supporting their positions, and the court agrees that the caselaw is divided on this issue.

Although the court is aware that candid self-evaluation is probably necessary in order to achieve voluntary compliance with the employment discrimination laws, the court believes that the plaintiffs also have a strong interest in obtaining redress in the present suit. Moreover, the court is aware that litigation is itself an effective way of enforcing the employment discrimination laws. The court has accepted defendant's argument with respect to reports that the defendant is *required* by law to file, but declines to extend that decision to other affirmative action documents in the absence of clear support in the caselaw for such a position.

However, the court is sensitive to the unique problems presented by the possible disclosure of complaints of sexual harassment. Plaintiffs have not alleged sexual harassment as a part of their complaint and did not intend the motion to compel to cover documents relating to charges of sexual harassment.

IT IS ORDERED that, with the exception of documents relating to charges of sexual harassment, the motion to compel is GRANTED.

Plaintiffs also moved the court for an order setting a deposition schedule. The parties have agreed to work out the deposition schedule, and the court deems the matter moot.

## OPINION AND ORDER

FRYE, District Judge:

Defendant has moved the court to compel plaintiffs to answer defendant's fourth set of interrogatories or, in the alternative, to allow defendant to serve interrogatories directly on class members. The interrogatories request plaintiffs to describe in detail any rules, regulations, standards, policies, practices or procedures, written or unwritten, of defendant or any institution, department, etc. which the plaintiffs believe discriminate against women on the basis of sex, with one interrogatory for each alleged injury (i.e., promotion, pay, tenure). The interrogatories further request plaintiffs to describe in detail the factual basis for their belief that certain practices, procedures, etc. are discriminatory, and request plaintiffs to identify each class member plaintiffs have reason to believe was discriminated against and to describe in detail the factual basis of each such claim. Interrogatory number 11

is different; it requests plaintiffs to identify each class member of whom plaintiffs are aware who believes that she was not discriminated against, and to describe in detail the factual basis upon which the class member believes no discrimination has occurred. Plaintiffs' response to the interrogatories essentially is this: (1) The practice of defendant is to discriminate against women with respect to [pay, promotion, tenure, etc.]. (2) The practices are discriminatory in that women do not have the same opportunities with respect to [pay, promotion, tenure, etc.] as do men. (3) The only class members identified as having been discriminated against are few in number and are mostly named plaintiffs. Plaintiffs have named these few individuals. (4) With respect to the named plaintiffs, defendant already knows the factual background of their claims of discrimination through the extensive discovery already taken. Defendant has also already asked the named plaintiffs for their knowledge of class members' claims. However, any information known to plaintiffs' counsel as a result of the return of plaintiffs' class questionnaire to counsel is confidential. (5) This also makes the information requested by interrogatory number 11 confidential and not subject to discovery.

Taken as a whole, it seems clear that the purpose of the fourth set of interrogatories is to enable defendant to defend against the class allegations made by plaintiffs. Defendant has had enough discovery to know the basis of the named plaintiffs' individual claims, but defendant also presently faces the possibility of *class-wide* liability as a result of this suit. Because this motion to compel implicates the class action aspects of this suit and the ability of defendant to defend the class action aspects, the court must examine the nature of plaintiffs' class claims more closely.

To some extent, the standards for certifying employment discrimination cases as class actions have changed since this suit was filed. Recent Supreme Court decisions, discussed at length by the parties and the court in earlier motions in this case, indicate that the requirements of Fed.R.Civ.P. 23

must be adhered to as strictly in employment discrimination cases as in other types of cases. In the present case, then, it does not follow that the plaintiffs may prove their class claims merely by prevailing on their individual claims. The plaintiffs must show more in order to prove class-wide liability. For each alleged specific injury, if plaintiffs prove that defendant has discriminated against named plaintiff "X," it only follows that plaintiffs will simultaneously have proved liability as to class members "Y" and "Z" if plaintiffs have also proved that there is some general set of causes that operate to produce discrimination in the same manner as to plaintiff "X" and the class members. With reference to this motion, the issue is how may the defendant disprove plaintiffs' class claims of liability, and whether the present interrogatories are relevant and necessary to defendant's disproof of the class claims of liability.

The primary way defendant may disprove plaintiffs' class liability claims is by showing that no class-wide causation mechanism exists; stated another way, defendant must show that given the way salary, promotion, tenure, etc. decisions are made at the institutions, proof that one or all named plaintiffs were discriminated against does not imply that class members have been discriminated against. Defendant's fourth set of interrogatories attempts to discover evidence tending to support such disproof in two ways: first, by asking plaintiffs to identify the class-wide causal mechanisms upon which the class-wide liability claims are based ("identify and describe in detail any rules, regulations, standards, policies, practices or procedures, written or unwritten . . . which you believe have discriminated against women"), and second, by seeking information as to whether in fact most class members have suffered discrimination (interrogatory number 11).

Plaintiffs' answers to the first ten interrogatories misconceive, in the court's view, the meaning of the words "rules, regulations, standards, policies, practices or procedures." Plaintiffs' answer to interrogatory number three is illustrative:

The practice of defendant is to make it more difficult for women faculty members to obtain tenure than for male faculty members and to make tenure track less available to women faculty than to male faculty.

(a) The practices are discriminatory in that women faculty members are not granted tenure when they have fulfilled the same requirements as male faculty members and that the discriminatory practices of defendant make tenure track less available to women faculty.

All this answer really says is that the aggregate *effect* of the totality of decision-making processes leading to tenure decisions is to discriminate against women. It does not identify a practice or policy or rule or procedure that operates as a *cause* of discrimination against named plaintiffs or class members. It is of no help to defendant in discovering the *factual basis* for plaintiffs' class-wide claims of liability.

Having said this, the court notes that plaintiffs' position is that they have answered the interrogatories to the best of their ability, either in their response to the fourth set of interrogatories, or in earlier interrogatories and depositions of class members. Taking this statement as true, the court then reads the answers to the fourth set of interrogatories as stating, in effect, "Plaintiffs cannot identify any generally applicable rules, regulations, procedures, etc., formal or informal, that operate as causes of discrimination against women faculty members. However, statistics show that, in the aggregate, women faculty members are discriminated against with respect to pay, tenure, promotion, etc., and this is sufficient to establish the class-wide claims of liability." Although the first portion of this statement has implications for the latter portion, assuming that this is a correct analysis of the meaning of plaintiffs' answers, then the motion to compel must be denied as to interrogatories one through ten. If plaintiffs are not contending that any formal or informal rule, standard, practice, etc. operates as a *cause* of discrimination on a class-wide basis, then plaintiffs have answered the interrogatories. If, however, plaintiffs intend to prove at trial the existence of such practices having a class-wide effect, these must be disclosed to the defendant, and denial of the motion to compel at this time is based on the belief that the plaintiffs know of no such practices having a class-wide effect, and not that defendant is not entitled to discovery of the matter.

Turning now to the general question of what information should be available to defendant as to individual class members' claims, the court notes that to a degree plaintiffs have placed defendant in a "Catch-22" situation. On the one hand, plaintiffs are litigating a suit that may result in defendant's liability to a large class, yet on the other hand are taking the position that defendant may not discover information about any individual class member's claim of discrimination. Plaintiffs' proposed bifurcation of the litigation does not solve the problem, for the extent of injury in the class is relevant to a finding of class-wide *liability* as well as to individual class members' damages. The court must attempt to resolve the competing interests at stake in this motion.

■ The first issue involves the questionnaires sent to class members and returned to plaintiffs' counsel. The court had indicated, and the plaintiffs' counsel and the class members to whom the questionnaires were sent understood, that the questionnaires were confidential. This requires the court to find that the questionnaires and the information contained in the questionnaires are not discoverable. Although the defendant contends that it merely seeks "ultimate facts" and not actual "communications" between class members and counsel, the fact remains that the contents of the questionnaires were communications from a client to an attorney under a situation where confidentiality was expected. Although an attorney cannot shield from discovery purely factual information obtained from a *third party* in some cases, and a client cannot resist testifying as to a fact merely because he has told that fact to his

attorney at some point, neither of these situations is present here. Defendant is not precluded by the attorney-client/work product privileges from obtaining information of a factual nature directly from class members, but it may not obtain the content of communications between class members and counsel made under an expectation of privacy and confidentiality.

This leads to the last issue—whether defendant should be allowed to serve interrogatories directly on the class members. The court is persuaded that the authorities are split on this issue. *Compare Brennan v. Midwestern United Life Insurance Co.*, 450 F.2d 999 (7th Cir.1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972) *with Wainwright v. Kraftco Corp.*, 54 F.R.D. 532 (N.D.Ga.1972). The court believes that the stronger policy arguments favor a rule generally denying discovery through class members. Part of the usefulness of the class action device is that it allows adjudication of class claims without the necessity for each class member to retain counsel to look after his/her individual interests. If, however, defendant were allowed to serve interrogatories on class members in the present case, the class members would be forced to check their responses with counsel if the responses in any way required opinions on legal matters. For example, if the court permitted defendant to serve a very simple interrogatory on class members, one which simply asks "Have you ever been discriminated against on account of sex by defendant or any institution, department, or other subdivision," it is entirely possible that factual circumstances that might form the basis of a claim of discrimination in the law might not be in a layman's mind sufficient to require an affirmative answer to such a question. The reverse may also be true. Of course, it might be possible to fashion interrogatories that are "purely" factual (e.g., name, age, years as a teacher, etc.). However, most of this sort of information is already in the hands of defendant. Even the answers to "purely" factual questions may have implications in the law which are unknown to laymen. This would lead to a

situation where, in order to answer the questions without risking prejudice to their claims, class members would be forced to obtain counsel to assist them in their responses. At this point, much of the efficiency of a class action is lost.

Although the court believes that as a general rule discovery through class members should not be allowed, the court would allow such discovery upon a showing of sufficient necessity. The issue then becomes whether the defendant's need for discovery through class members is sufficient. This in turn requires an examination of how the defendant might disprove plaintiffs' class liability claim. As stated earlier, the most likely way defendant will attempt to disprove class liability will be to show that (1) any acts that lead to discrimination against named plaintiffs are not of general applicability to the class, (2) any practices, procedures, rules, etc. that plaintiffs allege have class-wide applicability in fact do not have class-wide applicability, and (3) any statistical proof of aggregate discriminatory injury on the part of the class is not sufficient to establish class-wide liability. None of these methods requires defendant to have access to information regarding the individual factual bases of class members' claims. Because the court believes that defendant will be able to defend the class liability claims without any prejudice even if the information on individual class members' claims is not available to it, the court finds that discovery through individual class members shall not be permitted at this time.

The result of this ruling is not an unfair one. Inherent in class action litigation is the notion that liability on a class basis does not turn on the individual factual circumstances of each class member. However, certification of a class turns on a finding that there is a sufficient factual and legal commonality and typicality between the named plaintiffs' claims and the class members' claims. The burden of proving such commonality and typicality is on the plaintiffs. This court has stated and reiterates today that under Fed.R.Civ.P. 23(c)(1), class

certification may be altered or amended at any time before a final decision on the merits. If the evidence at trial indicates that a class action is not in fact appropriate, the court will not hesitate to decertify.

IT IS HEREBY ORDERED that subject to the terms of this order, defendant's motion to compel is DENIED.

## ON MOTION TO RECONSIDER

FRYE, District Judge:

■ Defendant has moved the court to reconsider its opinion and order of May 20, 1983. In that order, the court denied defendant's motion to compel answers to interrogatories, holding in part that defendant could not obtain access to information contained in questionnaires sent to class members and returned to plaintiffs' counsel. Upon reexamination, the court believes that the earlier opinion was erroneous, and that the defendant's motion to compel should be granted.

This motion involves the scope of the attorney-client/work product privilege in the context of a large class action. The problem exists because class members are really neither parties to the litigation nor clients of plaintiffs' counsel. Ordinarily, information of the type sought by defendant would be discoverable. Factual information conveyed to an attorney by a party/client is not shielded from discovery by the attorney-client privilege; such information is discoverable from the party/client through interrogatories served directly on the party/client. If the information is sought directly from the party/client, the work product privilege is not implicated at all. In the present case, plaintiffs seek to avoid allowing defendant access through the discovery process to information regarding the factual basis of class members' claims by use of the hybrid nature of the attorney-class member relationship: on the one hand, plaintiffs argue that because class members are not parties to the litigation, defendant cannot serve interrogatories on class members; on the other hand, plaintiffs argue that information obtained by plaintiffs' counsel through questionnaires

sent to class members is privileged either because of the attorney-client or work product privilege. This no-win situation effectively cuts off defendant's access to relevant information involving class members' claims through all discovery methods except deposition, which is expensive and time-consuming.

The flaw in plaintiffs' argument—and in this court's earlier opinion—is a failure to recognize that the work-product privilege is not an absolute privilege, but rather one which may be abrogated by a sufficient showing of necessity. Rule 26(b)(3), which covers discovery of documents and tangible things prepared by an attorney during the course of litigation, allows discovery "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Although Rule 26(b)(3) does not apply to the present situation because no "documents or tangible things" are sought, 4 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 26.64[1] (2nd Ed.1982), the landmark case of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), strongly indicates that information of the type sought by defendant is per se necessary and hence discoverable. In *Hickman v. Taylor,* plaintiffs attempted to obtain through discovery documents containing witness' statements recorded by defendants' counsel. The Court noted that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 329 U.S. at 507, 67 S.Ct. at 391. The Court then made clear that factual information obtained by counsel during the course of investigation and trial preparation may be discovered by interrogatories served on counsel: "Interrogatories were directed toward all the events prior to, during and subsequent to the sinking of the tug. Full and honest answers to such broad inquiries *would necessarily have included all pertinent information gleaned*

*by [defendants' counsel] through his interviews with the witnesses."* 329 U.S. at 508–09, 67 S.Ct. at 392 (emphasis added). Similarly, factual information gleaned by plaintiffs' counsel from the questionnaires sent to class members is discoverable by defendant through interrogatories served on plaintiffs' counsel.

The court does not believe that the information requested by defendant is protected by the attorney-client privilege or the promise of confidentiality extended to class members in the clarifying notice. The clarifying notice itself explicitly states that plaintiffs' counsel are not attorneys for individual class members. The promise of confidentiality is more problematic; however, the purpose of the promise was to insure that remarks made in the questionnaires would not be seen by class members' employer. This interest can be protected by restricting access to information obtained from the questionnaires to defendant's counsel.

Plaintiffs argue that they have given defendant huge amounts of information already during the course of discovery. However, plaintiffs make no objection to the interrogatories on the basis of relevance or undue burden.

Plaintiffs shall be required to answer all interrogatories in a timely manner, even if at the present time the answer must be "unknown" or something similar. Of course, both parties are under a continuing obligation to supplement answers to interrogatories as more facts are discovered.

Because fundamental fairness requires that defendant have access to the factual basis for class members' discrimination claims if it is to be subjected to possible class-wide liability in this case, and because none of the information requested by defendant is privileged, the court hereby vacates its earlier ruling, and hereby grants defendant's motion to compel plaintiffs to answer defendant's fourth set of interrogatories, as restricted herein. Defendant's motion to compel plaintiffs to timely supplement their answers to defendant's first set of interrogatories is also granted.

## ON MISCELLANEOUS MOTIONS

The matters before the court are:

## I. DEFENDANT'S DISCOVERY MOTIONS AND PLAINTIFFS' MOTION FOR RECONSIDERATION OF A PORTION OF THE ORDER OF JUNE 21, 1983.

■ The Federal Rules of Civil Procedure contemplate that all relevant *factual information* in the hands of parties to a suit or in the hands of their counsel is discoverable by the adverse party. In the present case plaintiffs have resisted production of factual information in response to interrogatories, which information plaintiffs obtained (1) through investigation of counsel or counsel-directed investigation by named plaintiffs and others and (2) through responses to a questionnaire mailed to class members. Such factual information is discoverable, although the manner in which the information was acquired is not.

IT IS THEREFORE ORDERED that the plaintiffs supply defendant with all relevant factual information regarding the claims or non-claims of named plaintiffs or class members, including information obtained from the questionnaires, but not including information already discovered by defendant through completed discovery. Plaintiffs need not reveal the manner in which the information was acquired. Furthermore, the court deems it appropriate under the Federal Rules to state in response to an interrogatory that information requested is unknown to a party or to counsel when such information is in fact unknown.

## II. PLAINTIFFS' MOTION TO BIFURCATE

Plaintiffs have moved to bifurcate the trial and try the issue of liability as to some specifications of injury at a later time. The interests of justice and judicial economy will not be served by such a bifurcation. This motion is DENIED. However, plaintiffs' motion to bifurcate liability and damages determinations is GRANTED; more-

over, plaintiffs may attempt to establish class damages as to pay through a statistical method at the first trial.

## III. STATISTICAL REPORTS

Plaintiffs want statistical analyses reports to be simultaneously exchanged, preferably on September 12, 1983. Defendant argues that because its analysis will be shaped by the content of plaintiffs' analysis, the discovery of the reports should be sequential. The court agrees with defendant. IT IS HEREBY ORDERED that plaintiffs will turn over their statistical reports to defendant on or before 5 p.m. on September 12, 1983. Defendant may then depose plaintiffs' statistical expert and shall turn over its statistical report to plaintiffs on or before 5 p.m. on October 3, 1983. Thereafter plaintiffs may depose defendant's experts and may make further statistical analyses as necessary, provided they are turned over to defendant on or before 5 p.m. on October 24, 1983.

## IV. WITNESSES

IT IS HEREBY ORDERED that there shall be a reciprocal, ongoing exchange between the parties of the names of witnesses the parties intend to call at trial. Plaintiffs are ordered to supply to defendant witnesses' names as they become known to them and to supplement or delete such names as necessary. Defendant is ordered, in response to receiving the names of plaintiffs' witnesses from time to time, to furnish to plaintiffs the names of defendant's witnesses as they become known to it and to supplement or delete such names as necessary.

## V. TRIAL DATE AND OTHER PROCEDURAL MATTERS

Defendant contends that plaintiffs' refusal to give discovery necessitates a set-over of the trial date for a period of three months. Defendant has also requested it be allowed a period of time to reargue the class certification issue before trial. The court is willing to set the trial date over for a *limited period* of time, but continues to believe that any reevaluation of the class certification issue is sufficiently bound up with the merits of the case that a reevaluation of the class certification question should not take place before the trial. Therefore, the court orders as follows:

1. The discovery deadline is extended to October 31, 1983;

2. The Pretrial Order lodging date is extended to November 11, 1983;

3. A pretrial conference will take place on November 17, 1983;

4. Trial in this case will commence on November 22, 1983.

The court relies on the good faith of the parties to adhere to these time guidelines and the orders reflected herein, and trusts the parties will work together in good faith to resolve any further discovery difficulties.