**HUDSON, et al.**

v.

**GENERAL DYNAMICS CORP.**

No. 3:96CV1317 (JBA).

United States District Court,
D. Connecticut.

Feb. 16, 1999.

Thomas G. Moukawsher, Moukawsher & Walsh, Groton, CT, for plaintiffs.

Linda L. Listrom, Craig C. Martin, Eric J. Wilson, Jenner & Block, Chicago, IL, Rodger W. Lehr, Jr., General Dynamics/Electric Boat Division, Groton, CT, for defendant.

### RULING ON PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S RULING REGARDING DISCOVERY MOTIONS (Doc. # 76)

ARTERTON, District Judge.

Pending before the Court is the plaintiffs' objection to the Magistrate Judge's Ruling re: Discovery Motions. (Doc. # 76). Plaintiffs contend that the Magistrate Judge's ruling on their motion to compel (Doc. # 51) and on defendant's motion to compel (Doc. # 47) is contrary to law and contains clearly erroneous factual conclusions. The challenged findings are: 1) the planned utilization of an *in camera* review to determine whether contested documents on General Dynamic's privilege log may fall within the fiduciary exception to the attorney-client privilege, 2) determination that the deposition testimony of Marie Pardo did not constitute a waiver of the defendant's attorney client privilege with respect to documents on its privilege log, and 3) compelling plaintiffs to produce their responses to the questionnaires used by their attorneys for individual information gathering.

### BACKGROUND

In this action, the sixty-seven plaintiffs each allege that they retired from General Dynamics just prior in time to General Dynamic's announcement of the "Golden Handshake" or Retirement Incentive Window Program designed to encourage employees to retire by offering them additional benefits.

The plaintiffs allege that General Dynamics knowingly or negligently made affirmative misrepresentations, failed to give complete information to their inquiries and/or failed to correct prior representations to them about the potential for a change in their retirement package in violation of its fiduciary duty to them as participants of an ERISA plan administered by General Dynamics.

General Dynamics filed a Motion to Compel the production of responses to the plaintiff attorney's questionnaires on grounds that the responses constituted witness statements. (Doc. # 47). Plaintiffs moved to compel all documents on General Dynamics' privilege log on grounds that the fiduciary exception to the attorney-client privilege applied under the circumstances. (Doc. # 51). The motions were referred to the Magistrate Judge, who granted the Defendant's Motion to Compel and ruled that the fiduciary exception to the attorney client privilege was not automatic and therefore deferred final determination on plaintiff's motion until after *in camera* review and the parties' briefing on applicability of the attorney-client or work product privilege. (Doc. # 74). Such *in camera* review has been postponed pending this Court's consideration of the Plaintiffs' Objection to Magistrate's Ruling re: Discovery Motions. (Doc. # 74).

## STANDARD OF REVIEW

■ Under 28 U.S.C. § 636(b)(1)(A), "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court," except for certain enumerated dispositive motions. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990). Matters concerning discovery are considered "non-dispositive," and a magistrate's orders regarding non-dispositive pre-trial matters are reviewed under the "clearly erroneous or contrary to law" standard. *Id.* (quoting 28 U.S.C. § 636(b)(1)(A)). Under this deferential standard of review, magistrate judges are considered to have broad discretion over discovery matters, and a party seeking to overturn a magistrate judge's discovery ruling bears a " 'heavy burden.' " *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F.Supp. 1078, 1099

(E.D.N.Y.1990) (*quoting Citicorp v. Interbank Card Ass'n*, 87 F.R.D. 43, 46 (S.D.N.Y. 1980)); *see also Just v. Landmark Temporaries, Inc.*, 1998 WL 167328, at *1 (S.D.N.Y. 1998); *DiFiore v. DiLorenzo*, 1995 WL 783192, at *1 (E.D.N.Y. Dec. 22, 1995). Reversal based upon an improper order denying or curtailing discovery is " 'unusual'." *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 523 (2d Cir.1996) (*quoting* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2006, at 92 (2d ed.1994)). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Magistrate judges are thus afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused. *See Conway v. Icahn*, 16 F.3d 504, 510 (2d Cir. 1994).

## DISCUSSION

### I. Review of Magistrate's Ruling on Plaintiffs' Motion to Compel (Doc. # 51)

■ In the plaintiffs' objection to the Magistrate's ruling, they allege that the Magistrate failed to recognize the possibility that some of the alleged privileged documents might relate to acts of plan administration and therefore fall within the fiduciary exception to the attorney client privilege. Cases interpreting this fiduciary exemption recognize that, "[w]hile the attorney-client privilege ordinarily shields from disclosure confidential communications between an attorney and his client ... [w]hen a fiduciary communicates with its attorneys about a fund it administers for the benefit of others ... the attorney-client privilege does not operate to conceal from the beneficiaries information about the fund." *Helt v. Metropolitan Dist. Comm'n*, 113 F.R.D. 7, 9 (D.Conn.1986); *see also Koch v. Exide Corp.*, 1989 WL 49515, at *1 (E.D.Pa.1989) ("When an attorney advises a fiduciary about a matter dealing with the administration of an employee's benefit plan,

the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries"); *see also Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494, 497 (D.Conn.1985); *Washington–Baltimore Newspaper Guild v. Washington Star Co.*, 543 F.Supp. 906, 909 (D.D.C.1982). A review of the Magistrate's ruling makes clear that he has not yet made a final determination as to whether the documents at issue fall within the scope of the fiduciary exception. Given the lack of detail in the defendant's privilege log and the fact-specific distinctions between fiduciary and nonfiduciary functions under ERISA, the Magistrate Judge adopted the more prudent course by requiring an in camera review and additional briefing on the defendant's grounds for asserting attorney client or work product privilege.

This *in camera* review will afford the Magistrate Judge the opportunity to review the contested documents and make factual determinations on whether the documents only pertain to non-fiduciary matters such as plan amendment, creation or termination such that General Dynamics' claim of attorney client privilege is validly invoked, or whether they pertain to issues of plan administration and are non-privileged under the fiduciary exemption. *In re Long Island Lighting Co., et al.*, 129 F.3d 268, 273 (2d Cir.1997).

Through an *in camera* review of the remaining contested documents, the Magistrate Judge will have the opportunity to consider the nature of the communications in light of the Supreme Court's and Second Circuit's decisions in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), and *Ballone v. Eastman Kodak Co.*, 109 F.3d 117 (2d Cir.1997), which set forth the factors that differentiate an employer's acts as fiduciary or nonfiduciary. Contrary to the plaintiffs' interpretation, the Court does not read the Magistrate's ruling as concluding that the disputed documents relate solely to plan amendment and therefore are privileged; rather, the ruling simply identifies the legal standard to be applied once the factual determination is made on whether the documents do relate to plan administration or nonfiduciary conduct. *In re Long Island Lighting Co., et al., supra.*

■ In determining whether the documents are insulated from discovery based upon the attorney client privilege, the Magistrate will consider the source or recipient of the legal advice, the purpose of the legal advice and the subject of the advice. In considering the source of the advice, the Magistrate must not only consider whether the individual was an attorney, but also what that person's function was within the corporation at the time the advice was offered. Even though General Dynamics relied upon the same counsel for its advice regarding its fiduciary and nonfiduciary obligations with respect to the plan, the Magistrate will need to discern whether any particular document or portions thereof are discoverable based upon content and relation to General Dynamic's role as fiduciary to the plaintiffs' under their existing ERISA plan. Only those portions relating to the plaintiffs' existing benefit plan would be discoverable, while those concerning General Dynamic's consideration of an amendment or changes in its benefit plan would not, since they would not relate to the existing benefits.

■ Plaintiffs' invocation of the fiduciary exemption does not require them to show "good cause" in order to invoke the fiduciary exception. *See Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 291, 326 (S.D.N.Y. 1991) ("the common-law principles governing required disclosure of trustee communications do not impose a 'good cause' limitation on the beneficiary's access to this type of information"); *Helt*, 113 F.R.D. at 10 n. 2 ("The Court is inclined to agree with those courts that . . . have not required the beneficiary to establish 'good cause' for the privilege not to apply.").

The Magistrate's *in camera* review will also consider whether the challenged documents are otherwise protected under the work product rule as recently decided by the Second Circuit in *United States v. Adlman*, 68 F.3d 1495 (2d Cir.1995) ("[T]here is no rule that bars application of work product rule to documents created prior to the event giving rise to litigation.").

■ Finally, the Court also finds no error in the Magistrate Judge's determination that the defendant's benefits counselor, Marie

Pardo's deposition disclosures did not waive defendant's privilege. Apparently, she was permitted to testify about the advice and instructions she received from defendant's general counsel with respect to whether and how defendant's forthcoming Golden Handshake should be described. At this juncture, there is no showing that other deposed officers or management employees have been or will be instructed differently by defendant's counsel or whether any of them have or will assert reliance on advice of counsel as a substitute for their independent exercise of their fiduciary duties. Ms. Pardo's testimony has not otherwise waived this privilege and at this point cannot be viewed as a benchmark based on similarity of circumstances for defendant's future assertions of privilege.

## II. Review of Magistrate's Ruling Granting Defendant's Motion to Compel (Doc. # 47)

The Magistrate Judge's order also granted the defendant's motion to compel 1) the plaintiffs' responses to their attorney's questionnaires, and 2) questionnaire responses of other former and current employees of the defendant to whom questionnaires were sent to obtain witness statements (including those who later may have become clients of the plaintiffs' attorney).

### A. Questionnaires completed by plaintiffs seeking or during representation by counsel

█ In actions involving representation of multiple clients like this one, a client questionnaire is often prepared by counsel as an efficient substitute for more time consuming face-to-face interviews to provide the attorney with client information in response to focused questions fashioned by the attorney about the potential client and his or her claims. The attorney can then transmute the client's raw information into litigation form such as a draft complaint, draft discovery responses, draft affidavits or otherwise. Such questionnaire use is to impart information from client to counsel to promote informed, effective representation—precisely the purposes advanced by defendant itself in seeking such protection for its documents.

Defendant's theory is that the plaintiffs' allegations in this litigation are not credible, but simply parrot their attorney's formulation of the issues in the questionnaire used by counsel to gather information from large numbers of clients. Simply put, whether the plaintiff's language used in their complaints and affidavits, which defendant characterizes as "boilerplate," was influenced by the language of their counsel's questionnaire is really of no relevance. Thus whether defendant has any other source for testing this proposition related to pleadings allegations is not shown to be essential to defendant's defense. What is relevant is the context and quality of the plaintiffs' testimony at trial (or in deposition for summary judgment purposes) about what they knew, asked or were told. If they cannot persuade the fact finder that certain representations were made or were made in such a way as to violate the defendant's fiduciary duty, they will not prevail. Whatever is contained in their complaints or affidavits will be of no import to their proof of their claims. Any documents used to refresh a witness's recollection will be produced to opposing counsel, but will not be admitted in evidence. The simple reality is that complaints and affidavits are drafted by lawyers and the language and contents are subject to the requirements and duties imposed by the Fed.R.Civ.P. and the Code of Professional Conduct.

In his ruling, the Magistrate Judge relies on *In re Kidder Peabody Securities Litigation,* 168 F.R.D. 459 (S.D.N.Y.1996) (finding that corporation had waived attorney-client privilege with respect to its attorney's investigative notes from interviews with its employees and incorporated into a final report that was affirmatively used by corporation to support its position in the pending litigation and an earlier SEC investigation) and *Garfinkle v. Arcata Nat'l Corp.,* 64 F.R.D. 688 (S.D.N.Y.1974) (finding defendant had effectively waived its attorney-client privilege by using an opinion letter received from its counsel as a defense in the pending litigation), for the proposition that the plaintiffs have effectively waived the attorney client privilege or work product doctrine by the "fact that the responses were used in draft-

ing of proffered affidavits." However, how the disputed documents were used in these two cases is readily distinguishable from how the questionnaires completed by the plaintiffs have been used thus far in this litigation. Since information obtained from a client by means of an interview is commonly used by attorneys to prepare litigation documents which clients must then verify under oath, the Court concludes that a finding that the plaintiffs have waived their privilege merely by the fact that their questionnaire responses were used to draft the plaintiffs' affidavits opens too wide a door on this important privilege. Defendants have not referenced anything in the record to demonstrate that the plaintiffs have proffered their responses to these questionnaires as a reliable account of the facts they allege in their affidavit or have attempted to bolster their credibility by their prior recording of their responses on such questionnaires. In order for the plaintiffs to have waived their privilege to their responses on their attorney's questionnaires, they would have had to have interjected the questionnaires into the litigation such as by using them to refresh their recollection or otherwise rely upon their questionnaire responses as an indicium of their credibility. However, the fact that their responses were used by their attorney to assist in drafting their affidavits which they then individually signed under oath is not alone a use that should waive the attorney client privilege, just as notes taken by counsel from a client's oral account would not be discoverable simply because they were used to assist counsel in drafting an affidavit thereafter.

The questionnaire responses must be examined for potential protection from discovery under the work product doctrine. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Fed.R.Civ.P. 26(b)(3). Rule 26 states that a party is generally unable to discover documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." *Id.* The party seeking such discovery can only obtain the information by showing a "substantial need." *Id.* The defendant asserts that the information contained in the questionnaires and the plaintiffs' responses are essential to establish the similarity of the plaintiffs' complaints and affidavits which cannot be obtained from other sources without undue hardship. (Def. Mem. in Support of Motion to Compel, Doc. # 48). However, the defendant has not demonstrated why it could not challenge the veracity or accuracy of plaintiffs' allegations at trial by using the plaintiffs' depositions to highlight absence of independent memory of the events or the close similarity of their pretrial statements. Therefore, the Court would similarly extend party work product protection to the plaintiffs' questionnaire responses.

For the foregoing reasons, the Court concludes it was error to compel the production of the plaintiffs' responses to their attorney's questionnaire absent any clear finding that the plaintiffs had waived their attorney client privilege by placing the contents "in issue through some affirmative act for [their] own benefit." *In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459 (S.D.N.Y.1996).

### B. Questionnaires sent to and completed by former employees of General Dynamics

■ The Magistrate Judge's ruling granting the defendant's motion to compel disclosure of *all* questionnaires also "addresse[d] the defendant's concern that there may be "non-client witness statements" that are being withheld on the grounds that some of the "witnesses" became "clients." " (Doc. # 74). Since in Section IIA of this opinion, *supra,* this Court has found that those questionnaires completed by the plaintiffs when they were clients or while attempting to become prospective clients are privileged (provided the plaintiff has not somehow affirmatively used the questionnaire as a sword in this litigation), the Court must separately consider those questionnaires sent to and completed in response to the plaintiff attorney's solicitation of witness statements from former General Dynamic employees.

The plaintiffs' attorney obtained the names of General Dynamic's employees by representing to this Court that his purpose was to contact them as potential witnesses and not to solicit them as prospective clients. Once the plaintiffs' attorney had obtained the list

of all former retirees, the plaintiffs' attorney sent them a questionnaire asking them to provide information regarding their knowledge of events relating to the terms of their retirement. Def. Ex. D ("*NOTICE* The letter enclosed is looking for your help as witness only"). After receiving the attorney's request for witness testimony, some of the respondents subsequently contacted and retained the plaintiffs' attorney to represent them in their similar claims. The issue is whether these employees, who later retained plaintiffs' attorney as their lawyer, may assert the attorney client privilege with respect to their initial questionnaire responses as fact witnesses. Because these initial questionnaires were completed not for the purpose of obtaining legal advice, but solely to serve as witness statements, and were completed prior to the existence of or any attempt by the recipient to create an attorney client relationship, these responses to this initial questionnaire fall outside any attorney client privilege. There is no such thing as a retroactive attorney client privilege to protect communications with the attorney before any attorney-client privilege relationship existed.

Unlike the questionnaires completed by the plaintiffs, this subset of questionnaires is not protected under the attorney client privilege or the work product doctrine since these questionnaires are simply witness statements with none of the indicia or purpose of any privilege. Any claim of work product as to the blank questionnaire itself was waived by plaintiffs' attorney when the questionnaire was sent out to third party former employees.

Therefore, any questionnaires sent to and completed by former General Dynamics employees for the purpose of obtaining witness information at the time completed must be produced and the plaintiff's objection to the Magistrate Judge's ruling is overruled.

### CONCLUSION

For the foregoing reasons, the Court concludes that the Magistrate Judge's Order that the documents in the Defendant's privilege log did not automatically fall within the fiduciary exception to the attorney client privilege but delaying final ruling on plaintiffs' motion to compel (Doc. # 51) pending further submissions by the parties and review of the documents *in camera* was proper, and the appropriate legal standard has been set out for this purpose. However, the Court sustains the plaintiffs' objection with respect to those attorney questionnaire response completed by plaintiffs as clients and overrules plaintiffs' objection with respect to questionnaires sent to and completed by former General Dynamic's employees for the purpose of developing witness statements, regardless of whether the respondent subsequently retained the plaintiffs' attorney.

IT IS SO ORDERED.