Steven **MORISKY**; Dennis Kimble; Michael Darraugh; William Kittle; Lyle S. Mayer; Howard Hiles; and Nicholas C. Ferrett on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**PUBLIC SERVICE ELECTRIC AND GAS COMPANY ("PSE&G"), Defendant.**

Civil No. 98–473.

United States District Court, D. New Jersey, Camden Vicinage.

Feb. 23, 2000.

Richard M. Schall, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Cherry Hill, NJ, for Plaintiffs.

Theresa Donahue Egler, Pitney, Hardin, Kipp & Szuch, Florham Park, NJ, for Defendant.

## OPINION

ROSEN, United States Magistrate Judge.

### I. INTRODUCTION

Presently before the court is the motion of Theresa Donahue Egler, Esquire, counsel for Defendant Public Service Electric and Gas Company ("PSE & G"), to compel the production of documents pursuant to Rule 26 of the Federal Rules of Civil Procedure.

After careful consideration of the parties' submissions, and for the reasons noted below, the defendant's motion shall be **_GRANTED._**

### II. FACTUAL AND PROCEDURAL HISTORY

In this putative class action, the plaintiffs allege that their employer, PSE & G, im-

properly denied them overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") and the New Jersey Wage and Hour Law, NJSA 34:11–56a1, *et seq.*, ("NJWHL"). (Complaint, ¶ 2; Certification of Richard M. Schall, ¶¶ 3, 4) (hereinafter "Schall Cert."). The present motion concerns 141 questionnaires produced by the plaintiffs' attorneys from the Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano law firm ("Tomar") and distributed to certain employees at PSE & G's Nuclear Business Unit ("NBU") in Hancock's Bridge, New Jersey, approximately two weeks before suit was filed against PSE & G. (Schall Cert., ¶¶ 6–10). Tomar did not disclose the existence of these 141 questionnaires in either the plaintiffs' Initial Disclosures or in response to the defendant's First Request for Production of Documents. (Defendant's Brief at 1) (hereinafter "Defs. Br."); (Certification of Theresa Donahue Egler, ¶ 5) (hereinafter "Egler Cert."). Defense counsel contends, and plaintiffs' counsel does not contest, that they only learned of these questionnaires at a deposition conducted approximately six months after the complaint was filed in response to a question they posed to a deponent. (Defs. Br. at 2).

The questionnaires were created by Tomar attorneys and distributed at a meeting held in a public firehouse in Salem, New Jersey, ("firehouse meeting") in January 1998. (*See* Schall Cert., ¶¶ 6, 10, questionnaire attached as Exhibit A to Schall Cert.). Attorneys from Tomar state that they attended this meeting because one or more of the now named plaintiffs informed them that there was a group of NBU employees who wished to discuss the possibility of suing PSE & G for overtime pay. (Schall Cert., ¶ 5).

According to the deposition testimony of named plaintiff William Kittle, Tomar attorneys invited Mr. Kittle to the firehouse meeting. (Deposition of William Kittle, T. 9:13 to 10:16, attached as Exhibit 5 to Egler Cert.) (hereinafter "Kittle Dep."). Mr. Kittle further testified that word of the firehouse meeting spread through PSE & G in conversations between the employees, not through individual invitations extended by Tomar attorneys. (Kittle Dep., 9:13 to 10:16). The majority of those in attendance from PSE & G had no previous communication with the Tomar firm. (Defs. Br. at 5). Rather, most attended the meeting only after hearing about it at work. (Defs. Br. at 5).

Tomar believes that approximately forty people were at the firehouse meeting, although they have no record of the people who attended. (Egler Cert., Ex. 8, ¶ 3). Indeed, Tomar presumes that the forty unidentified people were PSE & G employees even though this was an open meeting held in a public facility. (Schall Cert., ¶ 8). The Tomar attorneys distributed their blank questionnaires to those forty people who attended. (Schall Cert., ¶ 12). The questionnaires included questions concerning the employees' job titles, departments, job duties, training and education, job history at PSE & G, salary, work hours, and other questions pertaining to the employees' compensation, and overtime hours worked. (Schall Cert., Ex. A).

During the course of the firehouse meeting, Tomar gave out additional copies of the questionnaires for distribution among NBU PSE & G employees not in attendance. However, Tomar is unaware which people at the firehouse meeting received the additional questionnaires. (Egler Cert., Ex. 8, ¶ 6). Tomar is likewise unaware of the names of all the PSE & G employees who eventually received those questionnaires. (Egler Cert., Ex. 8, ¶ 6).

It was not until the deposition of named plaintiff Dennis Kimble, which occurred approximately six months after the filing of the lawsuit, that defense counsel learned of the existence of the questionnaires. (Deposition of Dennis Kimble, T. 268:17 to 269:24, attached as Exhibit 4 to Egler Cert.) (hereinafter "Kimble Dep."). During the deposition, Mr. Kimble mentioned the questionnaire in response to a question. (*Id.*). Counsel for the defendant asked plaintiffs' counsel to produce these documents, a request that was denied by plaintiffs' counsel. (*Id.* at 271–273). Only after this deposition did Tomar disclose the list of the 141 PSE & G employees who had completed and returned the questionnaires. However, the completed

questionnaires themselves were not disclosed. (Egler Cert., Ex. 10).

Tomar had no prior communication with most of the employees who completed the questionnaire. (Egler Cert., Ex. 10, ¶¶ 7–8). There were some general communications with the employees who attended the firehouse meeting, and Tomar subsequently had some type of written communications with the PSE & G employees who chose to join this lawsuit as potential class plaintiffs. (Egler Cert., Ex. 10, ¶¶ 7–8). There are a number of PSE & G employees who completed the questionnaires, but who subsequently chose not, or were not invited, to join plaintiffs' lawsuit. (Schall Cert., ¶¶ 21–24). Indeed, deposition testimony of named plaintiff Dennis Kimble indicates that he had not even considered suing PSE & G before he received and completed the questionnaire. (Kimble Dep., T. 273:25 to 274:9, attached as Exhibit 4 to Egler Cert.). He was under the impression that the questionnaires were informational only, and not being used for litigation. (Kimble Dep., T. 277:1–25).

Since learning of the existence of these questionnaires, defense counsel has sought production of them in discovery. (Egler Cert., ¶ 5). Although Tomar eventually produced blank copies of the questionnaires at issue, they have refused to produce the completed questionnaires. (Schall Cert., ¶¶ 28–31). Consequently, defense counsel moves to compel the production of the questionnaires.

Tomar contends that the defendant's motion to compel should be denied because the substance of the communication is protected from discovery by the attorney-client privilege and the work product doctrine. Conversely, the defendant asserts that the questionnaires are not protected because Tomar was not acting as counsel when the questionnaires in dispute were distributed and completed.

1. Fed.R.Evid. 501 states in pertinent part:
   Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

## III. DISCUSSION

### A. Privilege Doctrines

The attorney-client privilege and the work product doctrine are two separate principles intended to protect litigants from unfettered disclosure. *See Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ... if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

The privileges noted in Rule 26(b)(1) are encompassed in Rule 501 of the Federal Rules of Evidence. Rule 501 states that the application of any claimed privilege is governed by the common law, unless otherwise provided by the Constitution or other federal statute.[1] In cases premised upon federal question jurisdiction, as is the case here, federal common law governs the evidentiary privileges, rather than state law. *Harding v. Dana Transport, Inc.,* 914 F.Supp. 1084, 1090 (D.N.J.1996) (citing *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100, 103 (3d Cir.1982)). The party claiming the privilege has the burden of establishing that the privilege applies. *Id.* at 1089–90.

### 1. Attorney–Client Privilege

The United States Supreme Court has recognized that the purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader

public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *see also In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir.1979) ("the attorney-client privilege exists to foster disclosure and communication between the attorney and the client"). No bright-line rule governs the applicability of the attorney-client privilege and, as a result, the applicability of the privilege should be determined on a case-by-case basis. *Upjohn*, 449 U.S. at 396–97, 101 S.Ct. at 686. The Third Circuit has enumerated the traditional elements of the privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d at 1233 (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950)). Courts have found that "because the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *Harding*, 914 F.Supp. at 1091 (quoting *In re Grand Jury Investigation*, 599 F.2d at 1245).

■ Here, Tomar cannot establish that the 141 PSE & G employees who completed the questionnaires were clients or sought to become clients at the time the employees returned the completed the questionnaires. They also have no record of communicating with any of these individuals prior to the completion of the questionnaires. Moreover, the questionnaires were distributed before the lawsuit was even filed in a firehouse that was open to the general public where any person, even a person not employed by PSE & G, could have attended and filled out a form.

The only specific communication that Tomar can identify prior to the distribution of the questionnaires is the firehouse meeting. Yet, there is no evidence that even those forty persons who attended that meeting were then or are now clients of the Tomar firm: the identity of the persons-who may or may not have been employees-at the public firehouse meeting is unknown. Moreover, the names of the people who were given the questionnaires at the firehouse meeting are also unknown. Without this information, Tomar cannot even establish that the people at the firehouse meeting were some of the same 141 PSE & G employees who completed and returned the questionnaires to the Tomar firm. They also cannot establish that all or some of these forty employees later chose to join the lawsuit. Further, there are at least 100 other employees that did not even attend the firehouse meeting, but who returned completed questionnaires.

More importantly, the majority of the PSE & G employees who completed the questionnaires were given these questionnaires by other PSE & G employees at work after the firehouse meeting. Indeed, some of the employees found the questionnaire just sitting on their desks at work in plain view-hardly an indicia of a confidential communication. (Deposition of Lyle Mayer, T. 55:6 to 56:10, attached as Exhibit 5 to Egler Cert.) (hereinafter "Mayer Dep."). These employees indisputably had not attended the firehouse meeting. There is also no record that these employees had any communications with Tomar-directly or indirectly-at the time they completed the questionnaires. Consequently, there is nothing to indicate that these employees were seeking to become clients at the time they completed the questionnaires.

■ Although some or perhaps even many of the PSE & G employees may have eventually executed a consent to join the case, Tomar has no record of communications with the employees prior to the time

they completed the questionnaires. In fact, it appears that the ultimate purpose of the questionnaire was to solicit potential clients. Because "[t]he professional relationship for purpose of the privilege for attorney-client communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity,'" Tomar cannot show that it was acting as counsel for the PSE & G employees at the time the questionnaires were distributed and completed. *Connelly v. Dun & Bradstreet*, 96 F.R.D. 339, 342 (D.Mass.1982) (quoting *Westinghouse . Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.1978), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978)) (attorney sent cover letter with questionnaires indicating that he was a court-appointed attorney and that he was acting in a legal capacity in soliciting the information sought by the questionnaires).

■ In addition, Tomar appears to assert a representational relationship based on its projection that this litigation will proceed as a class action. However, at this juncture, this is only a putative class action and not a certified class action. The employees who have filed notices seeking to join this lawsuit as class members, therefore, cannot be considered clients of the Tomar firm. Even if certified as a class, "class members are really neither parties to the litigation nor clients of plaintiffs' counsel." *Penk v. Oregon State Bd. of Higher Ed.*, 99 F.R.D. 511, 516 (D.Or. 1983). As a result, only the named plaintiffs are clients of the Tomar firm at this stage. *Id.* Therefore, Tomar cannot assert the attorney-client privilege with respect to the employees who submitted the questionnaires but are not named plaintiffs because only clients can claim this privilege. *See Harding*, 914 F.Supp. at 1090.

■ Nevertheless, even if that were not the case, factual information conveyed to an attorney ·by a client is not shielded from discovery by the attorney-client privilege. *Penk*, 99 F.R.D. at 516. Tomar is trying to protect against the disclosure of the completed questionnaires under the guise of the attorney-client privilege. But, the questionnaires contain fact inquiries that have nothing to do with legal representation. Tomar further seeks to extend this privilege even to those who declined or may not have been invited to join the class action. The attorney-client privilege does not cover such information and, as a result, does not apply to the 141 questionnaires at issue.

### 2. Work Product Doctrine

■ The work product doctrine provides an independent ground upon which litigants may rely for protection of attorney materials prepared for trial. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The purposes behind the work product doctrine differ from those underlying the attorney-client privilege. The attorney-client privilege protects communications between clients and their attorneys, thus encouraging an open dialogue. *See Harding v. Dana Transport, Inc.*, 914 F.Supp. at 1097. In contrast, the work product doctrine maintains legal professionalism by precluding attorneys from capitalizing on an adversary's work efforts. *Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94. This doctrine has been codified as to tangible items in Rule 26(b)(3), Fed.R.Civ.P.[2] *Id.* The rule is aimed at protecting the legal theories developed by counsel in preparation for litigation. *Id.* In light of this purpose, the questionnaires in this case are not protected by the attorney work product rule.

---

**2.** Fed.R.Civ.P. 26(b)(3) states in pertinent part:
A party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The completed questionnaires are simply fact statements provided by 141 PSE & G employees before any attorney ever communicated with them. Tomar gave the questionnaires to several PSE & G employees, and then these employees openly distributed the questionnaires to numerous other PSE & G employees. The survey was not distributed in a confidential matter. Indeed, some employees found the questionnaire on their desks and had no idea who had placed it there. (Mayer Dep., T. 55:6 to 56:10, attached as Exhibit 6 to Egler Cert.).

Even more significant, however, is the fact that Tomar produced a blank questionnaire during discovery. In this court's opinion, the actual questions conceived and organized by Tomar are the only arguable work product of the Tomar attorneys. That Tomar produced this portion of the discovery, the only portion they actually created, indicates that they do not regard the actual questionnaire as work product. Instead, the Tomar attorneys contend that the employee informational product is that which the work product doctrine protects.[3]

In a strikingly similar case, the United States District Court for the District of Alaska granted the defendant's motion to compel plaintiff counsel's questionnaires. *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650 (D.Alaska 1994). In *Dobbs*, present and former employees of the defendant who were potential class members were given questionnaires to complete by the plaintiffs' attorneys. *Id.* The potential class members completed the questionnaires and returned them to the plaintiffs' attorneys. *Id.* During the course of discovery, a copy of the blank questionnaire was produced for the defendant, but the completed questionnaires were not made available. *Id.* The plaintiffs then filed a motion to protect the completed questionnaires from discovery arguing that the questionnaires were protected by the work product doctrine. The defendant moved to compel the production of the completed questionnaires.

The *Dobbs* court held that work product protection did not apply because the completed questionnaires were necessary for the full and fair development of the case. *Id.* at 653. When counsel for the plaintiffs argued that the information was otherwise discoverable through interrogatories and depositions, the Court responded:

> What is qualifiably privileged is the work of counsel. What a witness "knows" is not the work of counsel. That the witness' knowledge should be discoverable on a first-hand basis but not in the form of answers given to opposing counsel in writing, strikes the court as an example of elevating form over substance; and is as

---

**3.** In support of this notion, plaintiffs' attorneys reference in a string citation *High Tech Communications, Inc. v. Panasonic Company et. al.*, 1995 WL 83614 (E.D.La. Feb. 24, 1995). This case is inapposite. The *High Tech* defendant made a motion to compel the production of fact questionnaires prepared by High Tech's counsel for the purpose of obtaining factual information from distributors. *Id.* at *3. The United States District Court for the Eastern District of Louisiana held that the questionnaires in issue did not lose work product status merely because they contain discoverable factual information. The court further found that the defendant could adequately prepare for trial by deposing the individuals who responded to the questionnaire or by serving interrogatories.

*High Tech* does not apply here because the factual context of that case belies its application in the instant matter. In *High Tech,* only a few questionnaires were at issue, while there are 141 questionnaires at issue here. It would be next to impossible for the defendant's attorneys to depose the 141 individuals who completed the questionnaire or serve 141 sets of interrogatories before it must serve its response to plaintiffs' motion for class certification. Moreover, requiring the defendant's counsel to do so would be unduly burdensome. Indeed, it would defeat the purpose of discovery in a class action suit which is streamlined through representative plaintiffs. *See Penk v. Oregon State Bd. of Higher Ed.*, 99 F.R.D. 511, 516 (D.Or.1983).

Additionally, the questionnaires at issue in *High Tech* were filled out by distributors who were not part of the lawsuit. 1995 WL 83614 at *4. Moreover, the information contained in the questionnaires was not the focal point of the litigation. *Id.* As a result, the *High Tech* court found that the defendant did not need the factual information contained in the questionnaires at issue in order to prepare its defense. *Id.* Conversely, in the case of PSE & G, the questionnaires contain factual information that is in dispute and will be contested should the matter proceed to trial. Thus, there is clearly a substantial need for the material in this case.

far as the qualified work product privilege is concerned, a fiction.

*Id.* at 652. *See also Hudson v. General Dynamics Corp.,* 186 F.R.D. 271 (D.Conn. 1999) (questionnaires completed by employees prior to becoming clients are not protected under work product because they are simply witness statements with none of the elements of privilege). The *Dobbs* court further found that there was a substantial need for the defendant employer to obtain the questionnaires under the work product rule announced in Rule 26(b)(3), Fed.R.Civ.P.

Similarly, in the instant matter, the defendant has a substantial need for the completed questionnaires. The questionnaires contain specific factual information relating to the job duties and compensation of employees who are potential class members. They likewise contain information relating to each employee's opinion of whether he or she supervises other employees, whether he or she has the authority to hire and fire other employees, and whether any specialized training or education is required. (Egler Cert., Ex. 1). These are all disputed issues of fact crucial in determining whether overtime compensation was wrongly or rightly denied by PSE & G. Moreover, the questionnaires completed by the employees who chose not to join this lawsuit are also critical to PSE & G's defense because they may contain information that runs contrary to the claims of the proposed class plaintiffs.

It would be patently unfair, as an alternative, to require counsel to depose each of the 141 individuals and review the questions as they appear in the disclosed blank questionnaire. This would be unduly burdensome for both parties. It would also defeat the purpose of plaintiffs' class action in the sense that a class action suit allows discovery to be consolidated through representative plaintiffs. *See Penk,* 99 F.R.D. at 516. Further, requiring defense counsel to conduct 141 depositions prior to the time it must serve its response to plaintiffs' motion for class certifi-

cation would cause unnecessary delay to the case. Moreover, some of these employees no longer work for PSE & G, and the defense may not be able to compel their appearance at a deposition.

It would be equally burdensome to require PSE & G to serve 141 sets of interrogatories as an alternative to producing the questionnaires. Moreover, the interrogatory answers might be somewhat unreliable because, "[g]iven the opportunity to answer the same question twice at a substantial time interval, almost anyone will answer the question differently unless coached to give the same answer." *Dobbs,* 155 F.R.D. at 652. Furthermore, if Tomar provided the relevant information through interrogatories rather than the actual statements, they ironically would be providing the mental impressions that the work product doctrine is intended to protect. In answering interrogatories, counsel is using the same mental abilities to develop the case for clients as counsel employs to evaluate the questionnaires for the purpose of sorting out that which is discoverable. In addition, PSE & G is also entitled to the questionnaires for impeachment purposes should the matter proceed to trial. Therefore, the work product doctrine does not apply to the 141 questionnaires filled out by the PSE & G employees.

### B. Failure to Disclose Existence of Questionnaires

Finally, the court is particularly dismayed that the existence of these questionnaires did not surface with the plaintiffs' Initial Disclosures or with the defendant's request for production of documents. Indeed, if not for the fortuitous revelation by one of the named plaintiffs, the defendants may still not know about the questionnaires at all. Even assuming that the plaintiffs' did have a colorable privilege or work product argument, counsel was still required to disclose the existence of the questionnaires at issue under Rule 26 of the Federal Rules of Civil Procedure.[4] Simi-

---

4. Rule 26(b)(5) contains a procedure for parties attempting to withhold privilege information, stating:

When a party withholds information otherwise discoverable under these rules by claiming that

it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communication, or things not produced or disclosed in a manner that,

larly, Rule 36.1(b) of the New Jersey Federal Practice Rules provides that counsel must still identify all relevant documents withheld because of an asserted privilege.[5] *See generally Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973) (held that a detailed and itemized list should be provided by counsel in order to distinguish privileged information); *see also Canadian Imperial Bank of Commerce v. Boardwalk Regency Corp.,* No. 84–1606, letter op. (D.N.J. September 13, 1985), *aff'd* 108 F.R.D. 737 (D.N.J.1986).[6] These procedures assure that disputes such as this are resolved in an orderly and fair process.

## IV. CONCLUSION

Accordingly, for the reasons stated above, neither the attorney-client privilege nor the work product doctrine protects the questionnaires at issue from discovery in this case, and the defendant's motion shall be ***GRANTED.***

The attached order shall be entered.

### *ORDER*

This matter having come before the court upon the motion of Theresa Donahue Egler, Esquire, counsel for Defendant Public Service Electric and Gas Company ("PSE & G"), compelling the production of documents pursuant to Rule 26, Fed.R.Civ.P.; and the court having considered the submissions of the defendant; and the court having considered the opposition thereto; and for the reasons noted in the opinion entered on this date;

> without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

5. Rule 36.1(b) states:

> Where a claim of privilege is asserted in responding or objecting to any requests for admission, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether (a) any documents exist, or (b) any oral communications took place.

IT IS this 23rd day of February, 2000 hereby

**ORDERED** that the defendant's motion to compel the production of documents pursuant to Rule 26, shall be **GRANTED;** and

IT IS FURTHER ORDERED that the documents in question shall be produced to defense counsel no later than **March 14, 2000.**

6. *Canadian Imperial Bank of Commerce* contemplates a procedure for parties attempting to withhold allegedly privileged information. Specifically, where a claim of attorney-client privilege is made, the objector is required to specify (a) identity of the preparers, (b) recipients, (c) dates, (d) subject matter, (e) whether direct quotes or paraphrases of advice from counsel were identified, and (f) whether such quotes or paraphrases could be redacted, leaving non-privileged information.

Alternatively, where a claim of work production is made, the objector must provide the specifics as to (a) identity of the authors, (b) recipients, (c) dates, (d) purpose of the report, and (e) the dates and purposes of the relationship between the authors and plaintiff's counsel with sufficient particularity to sustain plaintiff's burden to show the applicability of the doctrine.